JUSTIN H. WILKES
1727½ Webster Avenue
Los Angeles, CA 90026
Telephone: (360) 362-8172
Email: justicewithjustin@gmail.com

Self-Represented

NO CV-30



LODGED
CLERK, U.S. DISTRICT COURT
AUG 8 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: KMH DEPUTY

2:21-cv-06378



FILED
CLERK, U.S. DISTRICT COURT
8/8/21
CENTRAL DISTRICT OF CALIFORNIA
BY: RO DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JUSTIN H. WILKES,

    Plaintiff,

v.

AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, THE AMERICAN AUTOMOBILE ASSOCIATION, INC.,

    Defendants.

Case No.: 2:21-cv-06378-JVS-RAOx

**COMPLAINT FOR DAMAGES**

(1) RACE DISCRIMINATION

**JURY TRIAL DEMANDED**

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) because each United States district court subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. 2000e-5(f)(3) because a substantial part of the events giving rise to this claim occurred in this district and because Plaintiff would have worked in this district

COMPLAINT FOR DAMAGES - 1

but for the alleged unlawful employment practice by Defendants.

# INTRODUCTION

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, which prohibits employment discrimination based on race. This action alleges that Defendants discriminated against Plaintiff because of Plaintiff's race as Black or African American. Plaintiff seeks damages in an amount sufficient to compensate Plaintiff for Plaintiff's loss resulting from Defendants' conduct. Plaintiff hereby requests a jury trial on this matter.

# PARTIES

4. Plaintiff JUSTIN H. WILKES is an individual and resident of Los Angeles County, California.

5. Defendant AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA is a California domestic nonprofit, with its principal place of business at 2601 South Figueroa Street, Los Angeles, CA 90007.

6. Defendant THE AMERICAN AUTOMOBILE ASSOCIATION, INC. is a Connecticut domestic corporation, with its principal place of business at 1000 AAA Drive, Heathrow, FL 32746.

# STATEMENT OF FACTS

**I. Defendants' Discriminated Against Plaintiff in Violation of Title VII of the Civil Rights Act of 1964**

7. This is an action for damages based upon Defendants' practice of employment discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

8. Plaintiff is Black or African American.

9. In October 2020, Plaintiff applied for a legal position with Defendants. Defendants sought applicants to fill a Corporate Legal Counsel position in Los Angeles, CA.

10. Defendants intentionally discriminated against Plaintiff as an applicant for the Corporate Legal Counsel position. After misleading Plaintiff for several months, Defendants rejected Plaintiff on the day of the insurrection on the United States Capitol in Washington, DC. As a result, Plaintiff suffered severe mental and emotional distress.

**A. Through a Series of Interviews Beginning in October 2020, Defendants gave Plaintiff the Impression that Plaintiff would be Hired on for the Corporate Legal Counsel Position**

11. On October 29, 2020, Defendants' HR Consultant reached out to Plaintiff to schedule an interview regarding the Corporate Legal Counsel position. Working alongside Plaintiff, Defendants' HR Consultant confirmed an interview on November 6, 2020.

12. The following week, Plaintiff experienced a conflict.

13. On November 3, 2020, Plaintiff asked Defendants' HR Consultant to

reschedule. At that time, Plaintiff was juggling a rigorous interview schedule. Plaintiff simultaneously had interviews with several leading global companies and well-known brands, such as the Chan Zuckerberg Initiative, Amazon, the NBA's Oklahoma City Thunder, the Writers Guild of America West and eHarmony among several others.

14. Defendants then took some time to respond.

15. Two days later, on November 5, 2020, Defendants' HR Consultant replied. Defendants' HR Consultant rescheduled Plaintiff's interview on November 9, 2020.

16. Plaintiff was offended by the delay. The delay caused Plaintiff to question if an interview would take place.

17. Contrary to Plaintiff's suspicion, on November 9, 2020, Defendants' HR Consultant interviewed Plaintiff. During their conversation, Defendants' HR Consultant shared numerous insights with Plaintiff about Defendants' company. Plaintiff grew excited given the tenor of their discussion. Plaintiff found Defendants' HR Consultant to be very pleasant. Plaintiff recognized that, at this stage in the hiring process, the wealth of information shared regarding Defendants' company was quite unusual. Plaintiff perceived that Plaintiff would be hired on for the position.

18. To further dispel Plaintiff's suspicions, Defendant's HR Consultant concluded their discussion by scheduling a follow-up interview. Defendants' HR Consultant tentatively set an interview with Defendants' Managing Counsel

Josiah Drew to discuss the Corporate Legal Counsel position in greater detail.

19. On November 12, 2020, Mr. Drew reached out to Plaintiff. Mr. Drew left Plaintiff a voicemail. Plaintiff thought highly of this gesture. Plaintiff thereafter returned Mr. Drew's call the same day.

20. Over their conversation, Mr. Drew set up an interview with Plaintiff on November 20, 2020. Plaintiff was impressed with Mr. Drew's conversation. Plaintiff also appreciated Mr. Drew's personal touch in choosing to make contact in anticipation of their interview.

21. On November 20, 2020, Mr. Drew interviewed Plaintiff. During the interview, Mr. Drew discussed Defendants' company in great detail, similar to Defendants' HR Consultant on November 6, 2020. Mr. Drew discussed at length the role of the Corporate Legal Counsel position with Plaintiff, which Plaintiff again found impressive. Mr. Drew then invited Plaintiff for a series of follow-up interviews with four members of Defendants' legal team. Mr. Drew thereafter explained that Plaintiff would speak to Defendants' General Counsel for a final round interview. Plaintiff relied on Mr. Drew's statements.

22. Following the interview, Plaintiff did not hear from Defendants for a few days.

23. On November 23, 2020, Defendants' HR Consultant reached out to Plaintiff. Defendants' HR Consultant scheduled four follow-up interviews between December 1-2, 2020, which Plaintiff previously discussed with Mr. Drew on November 20, 2020.

24. The following day, on November 24, 2020, Defendants' HR Consultant reached out to Plaintiff again. This time, Defendants' HR Consultant provided Plaintiff with the names and titles of each of Plaintiff's interviewers previously scheduled on November 23, 2020. Defendants scheduled interviews for Plaintiff to speak with Defendants' Corporate Secretary, Managing Counsel, Gail Louis first, Defendants' Corporate Counsel second, Defendants' Deputy General Counsel Eric Brown third and Defendants' Corporate Counsel Sherri Cohn fourth.

25. Plaintiff thereafter followed up with Mr. Drew. Plaintiff asked Mr. Drew questions regarding Plaintiff's upcoming interviews. Mr. Drew, in response, failed to answer several of Plaintiff's questions. For example, Plaintiff inquired about preparation for each of the four interviews. Plaintiff inquired about the duties and responsibilities of the Corporate Legal Counsel position. Plaintiff asked about the Corporate Legal Counsel's role with regards to compliance and associated filings in the insurance space. Plaintiff expressed an interest in learning about the Corporate Legal Counsel's role with regards to drafting and negotiating commercial contracts. With regards to terms of market conduct and financial exams as described in the position's description, Plaintiff inquired about how these activities would assist Defendants' company as a whole. Plaintiff also inquired about the interests and personalities of each of Plaintiff's interviewers.

26. Failing to receive a complimentary response from Mr. Drew disappointed Plaintiff.

27. Attempting to proceed undistracted however, Plaintiff then prepared for the upcoming interviews with Defendant's legal team.

28. On December 1, 2020, Defendants' Corporate Secretary, Managing Counsel, Gail Louis interviewed Plaintiff. Ms. Louis conducted the interview by video. At the outset of the call, Ms. Louis commented that "I want to get a good look at you." Plaintiff felt that Ms. Louis' comment was suggestive. Plaintiff felt objectified by Ms. Louis' statement. Plaintiff also felt sexually exploited.

29. Defendants' Corporate Counsel interviewed Plaintiff next. Defendants' Corporate Counsel conducted their interview by video as well. Similar to Plaintiff's previous discussion with Ms. Louis, Plaintiff continued to feel sexually exploited. Defendants' Corporate Counsel made facial expressions throughout their discussion that were sexual. Plaintiff felt distracted. Plaintiff's performance suffered as a result. Defendants' Corporate Counsel also suggested that several attorneys on Defendants' legal team were staunch Republicans, which Defendants' Corporate Counsel expressed differing views. Plaintiff felt nervous.

30. The following day, on December 2, 2020, Defendants' Deputy General Counsel Eric Brown interviewed Plaintiff. Similar to Plaintiff's conversation with Defendants' Corporate Counsel, Mr. Brown made facial expressions throughout their discussion that were sexual as well. Plaintiff felt uneasy. Mr. Brown, however, shared with Plaintiff that the next step in the interview process was for Plaintiff to interview with Defendants' General Counsel,

reiterating Mr. Drew's comment from November 20, 2020, which ultimately never occurred. Plaintiff left the interview feeling exploited once again.

31. Defendants' Corporate Counsel Sherri Cohn interviewed Plaintiff last. Ms. Cohn asked several tough questions that placed Plaintiff at a disadvantage. Plaintiff felt each question that Ms. Cohn asked set Plaintiff up to fail. However, toward the end of their time, Ms. Cohn indicated to Plaintiff that Plaintiff's skills were sufficient to meet the demands of the Corporate Legal Counsel position. Plaintiff left feeling positively about being hired on for the Corporate Legal Counsel position.

32. Following the interviews, Defendants did not reach out to Plaintiff.

33. In fact, on January 6, 2021, the day of the insurrection on the United States Capitol in Washington, DC, Defendants rejected Plaintiff for the position.

**B. Defendants Required Plaintiff to complete an Illegal Prescreening Assessment as an Applicant for the Corporate Legal Counsel Position**

34. In addition, on November 23, 2020, Defendants' HR Consultant sent Plaintiff an invitation to complete a candidate prescreening assessment.

35. The assessment stunned Plaintiff. Several racially insensitive questions were asked throughout the assessment, which Plaintiff found unsettling. From Plaintiff's perspective, Plaintiff perceived Defendants questions to stem from societal emotions spurred on by the global pandemic. In that regard, Plaintiff

COMPLAINT FOR DAMAGES - 8

perceived the questions asked in the assessment to be racially biased.

### C. Defendants Caused Plaintiff to Forfeit Other Employment Opportunities as a Result of Defendants Discriminating Against Plaintiff

36. As a result of Defendants' action toward Plaintiff, Plaintiff was caused to forfeit viable opportunities with the Chan Zuckerberg Initiative, Amazon, the NBA's Oklahoma City Thunder, the Writers Guild of America West and eHarmony in reliance on Defendants' statements regarding the Corporate Legal Counsel position.

## II. The United States Equal Employment Opportunity Commission's Los Angeles District Office Discriminated Against Plaintiff After Rejection

37. Following Plaintiff's rejection, the Los Angeles District Office of the Equal Employment Opportunity Commission ("EEOC") sought to deprive Plaintiff of due process.

38. In April 2021, Plaintiff filed a charge of discrimination against Defendants. Plaintiff scheduled an intake interview on April 27, 2021. Plaintiff received a reminder by email from the EEOC on April 26, 2021 regarding Plaintiff's intake interview on April 27, 2021. However, on April 27, 2021, the EEOC failed to call Plaintiff. Plaintiff was stunned.

# CAUSE OF ACTION

(For Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 by Plaintiff Justin H. Wilkes against Defendant Automobile Club of Southern California and Defendant The American Automobile Association, Inc.)

39. Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

40. Plaintiff believes and alleges that race was a motivating factor in Defendants' decision not to hire Plaintiff on January 6, 2021, the day of the insurrection on the United States Capitol in Washington, DC.

41. Defendants subjected Plaintiff to discrimination as an applicant for the Corporate Legal Counsel position. The Los Angeles District Office harassed and caused Plaintiff delays to follow.

42. Defendants' conduct as alleged constitutes an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

43. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race. Section 703(a)(1), as codified in 42 U.S.C. § 2000e-2(a)(1) of the United States Code, provides that:

> "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…"

Provided in section 703(a)(2), as codified in 2000e-2(a)(2) of the United States Code, it is impermissible for an employer:

"to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

As previously described in section 703(a)(1), section 703(m) further emphasizes that:

"Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

44. In <u>Griggs v. Duke Power Co.</u>, <u>401 U.S. 424, 429</u> (1971), the United States Supreme Court explained that:

"the language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered

racially stratified job environments to the disadvantage of minority citizens."

45. Griggs held that:

"What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." Id. at 431.

46. The United States Supreme Court, in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981), defined the burden of proof under Title VII of the Civil Rights Act of 1964. Id. at 248. To establish a prima facie case of disparate treatment, Burdine provided that a:

"[] plaintiff must prove by the preponderance of the evidence that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Id. at 253.

47. In this case, Defendants' refusal to hire Plaintiff for the Corporate Legal Counsel position violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

48. As proscribed in section 703(a)(1), Defendants engaged in an unlawful employment practice when Defendants refused to hire Plaintiff for the Corporate Legal Counsel position on January 6, 2021, the day of the insurrection on the United States Capitol in Washington, DC because of Plaintiff's race as Black or African American. Plaintiff's claim for discrimination arose at that point.

49. Defendants impermissibly limited, segregated and classified Plaintiff as an applicant because of Plaintiff's race. Defendants' conduct deprived Plaintiff of the Corporate Legal Counsel opportunity. Defendants' conduct resulted in Plaintiff being blackballed from Defendants' organization, as forbidden by section 703(a)(2).

50. Race was a motivating factor for Defendants' employment practices against Plaintiff, as described in section 703(m).

51. Similar to Griggs, Defendants fostered a racially stratified job environment to Plaintiff's disadvantage. Defendants created disturbances on several occasions in Plaintiff's hiring process. In each interview between October until December 2020, Plaintiff was harassed by Defendants' staff. Defendants failed to assure equal employment opportunity in these instances. As a result, Defendants also failed to eliminate discriminatory practices likely motivated by the pandemic and the political climate of today. Defendants similarly failed to meet this threshold when Defendants required Plaintiff to complete a discriminatory prescreening assessment, which assessed Plaintiff's cognition and personality from a racially skewed perspective.

52. Defendants sought to create artificial, arbitrary, and unnecessary barriers that prevented Plaintiff, as a member of a racial minority, from being selected for the Corporate Legal Counsel position. The barriers imposed by Defendants, on numerous occasions, operated to invidiously discriminate based on Plaintiff's race and, as a result, disproportionately impacted communities of color.

53. Plaintiff has suffered and will continue to suffer substantial losses in earnings and job benefits. Plaintiff has suffered and will continue to suffer mental and emotional distress, pain and suffering, all to Plaintiff's damage in an amount to be proven

at trial. Plaintiff was rendered sick, sore and disabled, both internally and externally, and has suffered numerous internal injuries, such as severe fright, shock, pain and discomfort. The exact nature and extent of said injuries are not known to Plaintiff, who will request leave of court to insert the same when ascertained. Plaintiff does not at this time know the exact permanence of said injuries, but is informed and believes, and thereon alleges, that some of Plaintiff's injuries are reasonably certain to be permanent in character.

54. Defendants intentionally engaged in the unlawful employment practice described against Plaintiff. Plaintiff, therefore, is entitled to an award of punitive damages against Defendants.

55. Plaintiff has suffered damages and seeks all remedies available at law and in equity in an amount to be proven at trial.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1. For affirmative action as may be appropriate.

2. For each offense in an amount that may be determined by a jury.

3. For a permanent injunction or other order to ensure full and fair consideration from Defendants if Plaintiff seeks similar employment in the future.

4. For compensatory damages, including back pay, lost wages and benefits, emotional and mental distress, medical and related expenses, and other pecuniary loss not presently ascertained according to proof in an amount to be determined at trial.

5. For punitive damages.

6. For prejudgment interest on all amounts claimed.

7. For any other equitable relief as the Court deems appropriate.

Plaintiff hereby demands trial by jury of all issues so triable.

                                      Respectfully submitted,

DATED:     August 6, 2021            JUSTIN H. WILKES

                                      By: *Justin H. Wilkes*

                                      JUSTIN H. WILKES

Case 2:21-cv-06378-JVS-RAO Document 2 Filed 08/08/21 Page 16 of 17 Page ID #:41

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To: | Justin H. Wilkes<br>18546 Kerill Road<br>Triangle, VA 22172 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 480-2021-02205 | Jose Herrera,<br>Investigator | (213) 785-3040 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Rosa M Viramontes
Digitally signed by Rosa M Viramontes
Date: 2021.05.05 14:21:38 -07'00'

May 5, 2021

Enclosures(s)

Rosa M. Viramontes,
**District Director**

*(Date Issued)*

cc: Jerri Mitchell
Senior Corporate Counsel
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA
3333 Fairview Rd. Stop A-451
Cosa Mesa, CA 92626